UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN K. BROOKS, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 04 C 8191 |
| MICHAEL SHEAHAN, in his official ) | |
| capacity as Sheriff of Cook County, Illinois; ) | Judge John W. Darrah |
| MARY JO O'LEARY, individually and in ) | |
| her official capacity; and JAMES SHOTWELL, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, John K. Brooks, III, filed suit against Defendants, alleging race and sex discrimination, retaliation, denial of equal protection of the laws based on race and sex, and false imprisonment/false arrest. Presently pending before the Court are Michael Sheahan and Mary Jo O'Leary's Motion for Summary Judgment and James Shotwell's Motion for Summary Judgment.

### LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying

on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (*Hemsworth*); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

Plaintiff did not file a response to the motions for summary judgment and has not disputed any of the Defendants' statements of material facts. Therefore, all the material facts averred by the Defendants are deemed admitted. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B). Even though Plaintiff failed to respond to the Defendants' statements of material facts and such facts are deemed admitted, the Defendants' motions for summary judgment will only be granted if the Defendants can demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

## FACTS

Brooks, an African-American male, was an employee of the Sheriff of Cook County.[1] Brooks held the rank of Deputy Sheriff and was assigned to Police Courts South, a division of the Sheriff's Court Services Department. (Def.s' 56.1(a)(3) Statement ¶ A6)[2]. Michael Sheahan is the Cook County Sheriff. (Id., ¶ A3). Mary Jo O'Leary was an Assistant Chief of Police Courts South

---

[1] It is unclear whether Brooks is still employed by the Sheriff of Cook County. Brooks does not allege that his employment was terminated.

[2] Michael Sheahan and Mary Jo O'Leary's statements of material fact are designated with the letter "A," and James Shotwell's statement of material facts are designated with the letter "B".

during Brooks' assignment in the Police Courts South. (Id., ¶ A4). James Shotwell was a Deputy Sheriff Lieutenant at Police Courts South. (Id., ¶ A5). Leonard Lucas, a sergeant with the Cook County Sheriff, was Brooks' supervisor. (Id., ¶ A7). Phillip Cochran, a sergeant with the Cook County Sheriff, was assigned to the Police Courts South facility at 51st and Wentworth. (Id., ¶ A8). Lorainne Evans is a Deputy Sheriff in Court Services for the Cook County Sheriff's Department assigned to Police Courts South. (Id., ¶ 9). Robert Beavers is the Chief Deputy Sheriff of the Court Services Division of the Cook County Sheriff's Department. (Id., ¶ A10).

The Sheriff's Court Services Department is responsible for providing courtroom security, maintaining decorum in courtrooms, handling prisoners in courtrooms throughout Cook County, and serving court papers. (Def.'s 56.1(a)(3) Statement ¶ B7). Police Courts South includes the court facilities located at 51st Street and Wentworth and 111th and Ellis. These courts include felony courtrooms and misdemeanor courtrooms. (Defs' 56.1(a)(3) Statement ¶ A11). Brooks was assigned to Police Courts South since the end of 1999 or the beginning of 2000. (Id., ¶ A12). There are four sergeants assigned to Police Courts South. (Id., ¶ A13). The sergeants are the immediate supervisors of the deputy sheriffs. The sergeants are supervised by the lieutenant, and the lieutenant reports to Assistant Chief O'Leary. (Id., ¶ A14). Brooks has been a member of the Teamsters Union since February 1998. (Id., ¶ A15).

The Court Services Department operates pursuant to rules of conduct, which are known as General Orders. Copies of the General Orders are provided to deputies, including Brooks, when they return from the academy. (Def.'s 56.1(a)(3) Statement ¶ A16). The General Orders establish policies and procedures within the Sheriff's Office. Beavers, attorneys, personnel staff and training staff participate in the development of the General Orders. (Id., ¶ A17).

3

Brooks was familiar with General Order No. 8001, Possession of Stars, I.D. Cards and Hat Shields. (Def.'s 56.1(a)(3) Statement ¶ A18). Brooks did not always carry his State of Illinois Firearm Owner's Identification Card ("FOID") and other required identification on his person while he was on duty. (Id., ¶ A19). Brooks lost his FOID sometime prior to or in November 2003, when he noticed that he did not have it in his possession. (Id., ¶ A20). Brooks was without a FOID card from November 2003 to July 2005. (Id., ¶ A21). After Brooks noticed that he had lost his FOID card, he was required to receive a new Sheriff's identification card while he waited for his new FOID card. (Id., ¶ A22). Brooks received his current FOID card in June or July 2005. (Id., ¶ A23). When Evans' FOID card expired, she was required to receive a new Sheriff's identification card while she waited for her new FOID card. (Id., ¶ A24).

Brooks was provided a copy of General Order No. 3401.1, which provides, in part:

> VI. K. 8. Members will not store or bring any department facility or vehicle alcoholic beverages, controlled substances or cannabis derivatives, except when these items are being held as evidence or used for training or other official function.

(Def.'s 56.1(a)(3) Statement ¶ A25).

At approximately 10:13 a.m. on December 19, 2003, Deputy Sheriff Sheryl Stankowski approached Shotwell and informed him that Cochran and other deputies were drinking alcohol in the basement lock-up area. (Def.'s 56.1(a)(3) Statement ¶ B27). Shotwell went to his office and telephoned O'Leary at her office at the 111th Street facility and informed her of what Stankowski had told him. (Id., ¶ B28). Upon learning of the situation, O'Leary drove to the 51st Street facility. (Id., ¶ B30).

O'Leary arrived at the 51st Street station at approximately 10:33 a.m. and went to the basement lock-up area with Shotwell. (Def.'s 56.1(a)(3) Statement ¶ B32). O'Leary and Shotwell observed Brooks' sitting at a desk using his laptop computer to make music CDs. (Id., ¶ B33). A brown, glass long-neck beer bottle with no label was on the desk being used by Brooks. (Id., ¶ B34). The beer bottle was within Brooks' reach and was approximately three-quarters full. (Id., ¶¶ B35-B36). O'Leary directed Shotwell to smell the liquid inside the bottle, and he found that it smelled like beer. (Id., ¶ B37). O'Leary asked Brooks if the bottle was his, to which he said no. O'Leary ordered Shotwell to take the bottle. (Id., ¶ B38).

O'Leary instructed Brooks to accompany her and Shotwell upstairs. (Def.'s 56.1(a)(3) Statement ¶ B40). While going upstairs, O'Leary saw Cochran and noticed he had red, glassy eyes. (Id., ¶ B41). Cochran claimed to know nothing about the beer bottle in lock-up. (Id., ¶ B 42). O'Leary instructed Cochran to accompany her, Shotwell, and Brooks to Shotwell's office. (Id., ¶ B 44).

Once inside Shotwell's office, O'Leary instructed Brooks and Cochran to stay in the office. O'Leary left the office, and Shotwell remained in the office. (Def.'s 56.1(a)(3) Statement ¶ B48). Brooks asked Shotwell if he could use the bathroom, and Shotwell repeated O'Leary's order that Brooks and Cochran remain in the office. (Id., ¶ B49).

Meanwhile, O'Leary called her supervisor and Cook County Sheriff's Department, Internal Affairs Division ("IAD") to notify them of what happened and to obtain advice on how to proceed. (Def.'s 56.1(a)(3) Statement ¶ B50). O'Leary's supervisor advised her that he would contact the

Sheriff's Police Department to request a police officer administer a breathalyzer test to Brooks and Cochran. (Id., ¶ B 51). IAD advised O'Leary that they would send investigators to the facility. (Id., ¶ B52).

Sometime later, Sheriff's Police Officer Michael Knaus and two IAD investigators, Timothy McClain and Willie Jackson, arrived at the 51st Street facility. (Def.'s 56.1(a)(3) Statement ¶¶ B53-B54). O'Leary, Shotwell, Knaus, Jackson, McClain, Cochran, and Brooks then went to the lock-up used by the Chicago Police Department at the 51st Street facility to use the breathalyzer device. (Id., ¶ B55). O'Leary ordered Cochran and Brooks to take the breathalyzer test. Initially, neither obeyed the order nor explicitly refused the order. (Id., ¶ B58). Approximately 10 to 20 minutes later, Cochran and Brooks agreed to take the breathalyzer test. (Id., ¶ B59). Both Cochran and Brooks registered 0.000 alcohol content on the breathalyzer. (Id., ¶ B60). After the breathalyzer test, O'Leary instructed Cochran and Brooks to go back upstairs to be interviewed by IAD. (Id., ¶ B63).

On that date, Brooks was not told that he was under arrest, was not handcuffed, was not read *Miranda* rights, was not placed in a locked room, was not told he could not leave, was not restricted in any manner, and was permitted to remain in uniform and in possession of his badge. (Def.s' 56.1(a)(3) Statement ¶A48). Following their interviews with IAD, Brooks and Cochran returned to their regular duties for the duration of their shifts. (Id., ¶ A51; Def.'s 56.1(a)(3) Statement ¶ B66). Brooks testified that he was not permitted to leave the facility on December 19, 2003, because he was on duty. (Def.s' 56.1(a)(3) Statement ¶ A50).

An investigation regarding December 19, 2003, was conducted by IAD. (Def.'s 56.1(a)(3) Statement ¶ A27). The allegation that Brooks was drinking while on duty was not sustained. Allegations that an open bottle of beer was found in the receiving area lock-up, that Brooks did not sign out for lunch, and that Brooks parked his personal car in the receiving area for prisoner vans were sustained. Brooks received a five-day suspension, of which he did not grieve through his union. (Id., ¶¶ A28-A29).

IAD also conducted an investigation pertaining to allegations that at 0925 hours on April 9, 2004, Brooks signed in as 0800 hours. (Def.'s 56.1(a)(3) Statement ¶ A30). During this investigation, Brooks gave a statement that on April 9, 2004, Brooks worked the lock-up with Deputy Hargrave. (Id., ¶ A31). The allegation that Brooks failed to sign in when reporting for duty, that Brooks stated he was working with Deputy Hargrave when Deputy Hargrave was not at work because Deputy Hargrave was on a medical day off, and that Brooks signed in at 0925 hours as 0800 hours were all sustained. Brooks received a ten-day suspension, of which he did not grieve through his union. (Id., ¶¶ A32-A33).

Brooks was provided and was familiar with General Order No. 800.2, Appearance in Uniform, General Order No. 8002, Personal Appearance, and General Order No. 8408.2, Uniform and Equipment Safety. (Def.'s 56.1(a)(3) Statement ¶¶ A34-A35, A37). Brooks was familiar with all of the terms of General Order No. 7000.1, Complaint and Disciplinary Procedures. (Id., ¶A36).

IAD investigated complaints that Brooks failed to comply with Personal Appearance and Uniform Standards and failed to obey a direct order during May and June 2004. (Def.'s 56.1(a)(3) Statement ¶ A38). The allegations that Brooks: failed to obey a direct order to comply with general Order No. 8002, went to Internal Affairs out of uniform, disobeyed a direct order not to sign out prior

to removing certain clothing and jewelry, and refused to write a report requested by his supervisor were sustained. Brooks received a 29-day suspension based on the investigation. (Id., ¶ A39). Brooks grieved the suspension, and the suspension was reduced to a 25-day suspension. (Id., ¶ A40).

In August 2004, IAD conducted an investigation of complaints that Brooks failed to adhere to uniform standards and refused to obey direct orders. (Def.'s 56.1(a)(3) Statement ¶ A41). The IAD sustained the allegations and recommended that Brooks' employment be terminated. (Id., ¶ A42).

Brooks admits that he violated General Order No. 8002 in 2003, 2004, and 2005 by wearing his hair in dreadlock style. (Def.'s 56.1(a)(3) Statement ¶¶ A43-A46). In his September 21, 2004 statement to IAD, Brooks admitted that he told his supervisor that he would not cut his dreadlocks and, despite a directive to do so, he would not write a memo regarding his refusal to cut his dreadlocks. (Id., ¶ A47).

## ANALYSIS

Brooks' discrimination claims are brought under Title VII and 42 U.S.C. § 1981. The standard for establishing discrimination under Title VII and Sections 1981 (and 1983) are identical. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (*Humphries*); *Helland v. South Bend Cmty. Sch. Corp.*, 93 F.3d 327, 329 (7th Cir. 1996).

*Race Discrimination Claim*

A plaintiff may prevail on his discrimination claim either through the "direct method" – showing intentional discrimination – or through the similar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) (*Blise*). The direct method of proving discrimination

requires the introduction of direct or circumstantial evidence of discrimination. Direct evidence requires, essentially, an admission by the defendant that the action was based on a prohibited animus. *See Blise*, 409 F.3d at 866. Brooks does not present direct evidence of discrimination, and he must proceed under the indirect method.

To establish a *prima facie* case of race discrimination under the *McDonnell Douglas* framework, Brooks is required to demonstrate that: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001). If Brooks demonstrates a *prima facie* case, the burden shifts to the Defendants to demonstrate "a legitimate, nondiscriminatory reason for the action." *Blise*, 409 F.3d at 867. If the Defendants meet this burden, the burden shifts back to Brooks to demonstrate the proffered reason is pretextual. *Blise*, 409 F.3d at 867.

Brooks is a member of a protected class, and his suspensions constitute an adverse employment action. The requirement that Brooks receive a new identification and FOID card and any alleged different reprimands for violating General Orders would not constitute an adverse job action. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (*Griffin*) (unfair reprimands and oral and written reprimands do not constitute an adverse action); *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (*Whittaker*) (unpaid suspension constitutes an adverse action). However, Brooks fails to demonstrate a genuine issue of material fact exists as to whether he was meeting his employer's legitimate performance expectations and/or whether similarly situated employees not in the protected class were treated more favorably.

Brooks was suspended for the December 19, 2003 beer bottle having been found in Brooks' work area and his failure to properly sign-in on April 9, 2004, and false information during the investigation on that date. Brooks did not grieve either of these suspensions. Brooks was also suspended for failing to comply with uniform standards and his refusal to obey direct orders. Brooks grieved one aspect of this suspension, and the suspension was reduced from 29 days to 25 days. Brooks does not dispute that he failed to comply with the uniform standards or that he refused to obey an order. Based on the above, Brooks has not demonstrated a genuine issue of material fact exists as to whether he was meeting the Defendants' performance expectations.

Nor has Brooks identified any similarly situated employee that was not in the protected class that was treated more favorably than Brooks. Accordingly, Brooks has failed to demonstrate a *prima facie* case of discrimination.

Assuming argumendo, that Brooks had presented a *prima facie* case, he has also failed to demonstrate that the Defendants' legitimate, non-discriminatory proffered reasons for requiring his suspensions were a pretext to discrimination.

To demonstrate pretext, a plaintiff must show that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995).

As discussed above, Brooks did not grieve two of his suspensions and concedes that he failed to comply with uniform standards and refused to obey direct orders. Brooks has failed to present any evidence that the Defendants' reasons for his suspensions were merely pretext to discrimination.

Based on the above, summary judgment is granted in the Defendants' favor on Brooks' race and sex discrimination claim.

*Retaliation Claim*

Title VII also prohibits an employer from retaliating against an employee that has complained of unlawful practices. *See* 42 U.S.C. § 2000e-3(a). An employee may present either direct or indirect evidence of retaliation. *See Humphries*, 474 F.3d at 404. Under the direct method, a plaintiff must show: (1) he engaged in a statutorily protected activity, (2) he was subjected to an adverse employment action, and (3) there is a causal connection between the two events. *See Humphries*, 474 F.3d at 404.

In May 2004, Brooks filed a complaint with the Cook County Commission on Human Rights concerning the alleged discriminatory treatment to which he was being subjected. Following his complaint, Brooks was suspended in August 2004 for failing to comply with uniform standards and refused to obey direct orders. However, Brooks concedes that he failed to comply with uniform standards and refused to obey direct orders. Thus, he has failed to demonstrate a causal connection between the two events.

Under the indirect method, a *prima facie* case of retaliation requires the plaintiff to demonstrate that: (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite meeting his employer's legitimate

11

job expectations, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. If the plaintiff establishes a *prima facie* case, the employer must offer a legitimate, noninvidious reason for the adverse employment action. Once the employer does this, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason for termination is a pretext to retaliation. *See Tomanovich v. City of Indianapolis*, 457 F.3d 657, 663 (7th Cir. 2006).

As addressed above, Brooks has failed to demonstrate that he performed his job according to his employer's legitimate expectations and/or that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

Even if Brooks had demonstrated a *prima facie* case of retaliation under the indirect method, as discussed above, he has failed to demonstrate that the Defendants' reason for the suspension was pretext to retaliation.

Based on the above, summary judgment is granted in the Defendants' favor on Brooks' retaliation claim.

*Deprivation of Equal Protection Claims*

A plaintiff may prevail on a denial of equal protection claim by demonstrating that: (1) he is similarly situated to members of the unprotected class, (2) he was treated differently than members of the unprotected class, and (3) the defendants acted with discriminatory intent. *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000) (*Greer*).

Brooks alleges that his equal protection rights were violated because he was subjected to disciplinary actions and retaliation because of his race and sex. Brooks fails to identify any member of the unprotected class of which he was treated differently. Furthermore, he has failed to demonstrate discriminatory intent because he essentially concedes all of his infractions that resulted in his suspensions.

Based on the above, summary judgment is granted in the Defendants' favor on Brooks' equal protection claims.

*False Imprisonment/Arrest*

To prevail on a claim of false imprisonment or false arrest (the terms are used interchangeably), a plaintiff must demonstrate that he was arrested or restrained by the defendant and that the defendant acted without reasonable grounds to believe that the plaintiff committed an offense. *See Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 798 (2006).

Brooks' false imprisonment/arrest claim fails because Brooks concedes that he was not told that he was under arrest, was not handcuffed, was not read *Miranda* rights, was not placed in a locked room, was not told he could not leave, was not restricted in any manner, and was permitted to remain in uniform and in possession of his badge during the investigation of the open beer bottle. Following his interviews with IAD, Brooks returned to his regular duties for the duration of his shift. Furthermore, Brooks testified that he was not permitted to leave the facility on December 19, 2003, because he was on duty – not because he was under arrest.

Based on the above, summary judgment is granted in the Defendants' favor on Brooks' false imprisonment/arrest claim.

## CONCLUSION

For the foregoing reasons, Michael Sheahan and Mary Jo O'Leary's Motion for Summary Judgment and James Shotwell's Motion for Summary Judgment are granted.

Dated: May 22, 2008

JOHN W. DARRAH
United States District Court Judge